IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RAYMOND JOSEPH KNIGHTON, JR.,

Petitioner,

vs.

Case No. 08-3026-JTM

STATE OF KANSAS, et al.,

Respondents.

MEMORANDUM AND ORDER

This is an action by Petitioner Raymond Joseph Knighton, Jr. for habeas relief. Knighton is currently in custody and incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas, having been convicted of kidnapping, rape, robbery, and attempted robbery. Knighton alleges the following errors: insufficient evidence to support his convictions, his two rape convictions were multiplicitous, his motion to suppress was erroneously denied, and the trial court erred in refusing to instruct the jury on the lesser included offense of attempted robbery. (Dkt. No. 1, 6-10).

The court finds that an evidentiary hearing on Knighton's claims is not necessary. The record establishes that on February 25, 2004, Knighton was charged in the District Court of McPherson County, Kansas with one count of aggravated kidnapping in violation of K.S.A. 21-3421, two counts of rape in violation of K.S.A. 21-3502(a), two counts of robbery in violation of K.S.A. 21-3426, and one count of attempted aggravated robbery in violation of K.S.A. 21-3427. The jury found Knighton guilty of kidnapping, two counts of rape, two counts of robbery, and one

count of attempted robbery on December 9, 2004. On February 22, 2005, the court sentenced Knighton to 618 months confinement in the Department of Corrections.

In his subsequent appeal, Knighton argued (1) there was reasonable doubt as to his guilt; (2) the trial court erred in refusing to suppress statements made by him; (3) the court erred in refusing to instruct the jury as to the lesser included offenses of attempted theft and attempted robbery; (4) the court erred in combining the automobile robbery charges with the rape and kidnapping charges; (5) that the two rape convictions were multiplicitous. The Kansas Court of Appeals affirmed Knighton's convictions on October 6, 2006. *State v. Knighton*, 143 P.3d 421, 2006 WL 2864743 (2006) (unpublished decision). Knighton petitioned to the Kansas Supreme Court for review, which denied the request on February 13, 2007. *State v. Knighton*, 143 P.3d 421, 2006 WL 2864743 (2006).

Knighton filed this action for federal post-conviction relief pursuant to 28 U.S.C. § 2254 on October 6, 2006 raising essentailly the same issues presented to the Kansas Court of Appeals.

**The Facts**

On February 24, 2004, C.I. was working as a cab driver for the A-1 Cab Company in Junction City, Kansas. At approximately 2:30 a.m., she picked up Petitioner Knighton as a fare for transport, and called her dispatcher, saying she was driving her passenger to Building 404 at Fort Riley. (R. VI, 31-33).

During the trip, Knighton told C.I. that he had been in the military for fifteen years and just made it through Basic Training as a 2nd Lieutenant. C.I. had been in the military and knew that the

2

statement was incorrect. When they arrived at Fort Riley, Knighton did not have military identification, but they still made it on the post. (*Id.* at 36).

Once on the post, they did not drive to Building 404 because Knighton asked C.I. to continue driving to Manhattan, Kansas, which she did after radioing the dispatcher. In Manhattan, Knighton went inside an apartment building, and then returned to ask for a ride to Salina, Kansas. C.I. did not think this request was unusual, because military personnel commonly asked to travel to a variety of Kansas cities. (*Id.* at 40-42).

C.I. told Knighton that the trip would cost $80.00, which Knighton agreed to pay. She again radioed her boss, Larry West, who consented to the trip. On the way, Knighton had C.I. stop at the Homestead Motel in Junction City, where he went to a motel room and returned with a two-liter soft drink. When he returned, he sat in the front passenger seat and the drive resumed. (*Id.* at 43-45).

While driving toward Salina, Knighton suddenly slapped C.I. on the side of the face without warning and said that if she cooperated with him, he wouldn't kill her. He also said he had a gun, and that he would kill her if she did not cooperate. C.I. testified that she became hysterical and pulled the cab to the side of the road on I-70. (*Id.* at 45).

Knighton told C.I. to calm down and she eventually steadied to the point that she could continue driving. In Salina, Knighton demanded that C.I. call West and tell him that she had collected the fare. (*Id.* at 47-48). She complied out of fear and concern for her safety. (*Id*. at 48-49).

While stopped at a gas station, Knighton told C.I. he now wanted to travel to El Dorado, Texas. He took money from her and went inside to get a map. (*Id.* at 49). C.I. testified she relinquished her money because she felt threatened and wanted to live. Knighton took the keys so C.I. could not drive away; there was no one near the cab to whom she could call for help.

The gas station did not sell the right map, so Knighton repeated this process at another gas station. (*Id*. at 50-51). Knighton directed C.I. to drive him to a motel in Salina. He told her that he would release her if she would get him a room at the motel. (*Id.* at 52).

C.I. falsely said she did not have enough money for the motel, so they continued toward McPherson, Kansas. (*Id*. at 52-54). As they approached the town, Knighton again said he wanted to drive to Texas; C.I. again said she needed to call her dispatcher. Knighton had C.I. stop at a motel near the Interstate in McPherson.

Knighton and C.I. rented a room and left a ten-dollar deposit so C.I. could call West about Knighton's Texas trip. (*Id.* at 56, 58). West refused to allow the trip, as the car's licensing did not allow interstate travel. (*Id*. at 60). Knighton stood next to C.I. during the call so that she could not speak freely. (*Id*. at 61). After the call, Knighton became restless and eventually went into the bathroom; C.I. sat on the edge of the hotel bed and waited. (*Id*. at 61-62).

Knighton was naked when he came out of the bathroom and twice had forcible sex with C.I., threatening the first time to kill her if she screamed or cried. C.I. wanted to say "no" but she said nothing because she was afraid for her life. (*Id.* at 63). She complied by taking off her clothes although she had no desire to have sex with Knighton. (*Id*. at 64-65). She had sex to stay alive. (*Id*. at 65). When he was finished, she told Knighton that she was about to throw up. Knighton responded by hitting her in the head with his hands. He said that he still wanted C.I. to drive him to El Dorado, Texas and that she should call West and tell West that Knighton had kidnapped her. (*Id*. at 68).

Before making the call, C.I. tried to get some sympathy from Knight by saying (falsely) that her young child was with a babysitter in Junction City. (*Id.* at 68). C.I. called West, and told him her fare had kidnapped her. (*Id.* at 68-69). Knighton then ook the phone and told West that he wanted

to go to Texas, and that he would release C.I. at the Kansas-Oklahoma border. Knighton told West that if he refused, Knightono would kill C.I.'s son and the babysitter. He said he would also kill the son and babysitter if West called the police.

It was then about an hour after the first sexual assault. C.I. was still undressed, and Knighton raped her again. She did not want to have sex, but did so because she felt threatened. (*Id*. at 69-70). After he finished, Knighton became nervous and decided it was time to leave. (*Id.* at 71). Before they left the hotel room, Knighton took some money from C.I. against her wishes. She felt threatened when he demanded her money so she turned it over in the hope that she could finally go home. (*Id*. at 72).

They drove to the lobby, Knighton gave C.I. the key, and he went inside. C.I. immediately drove into McPherson and stopped at a car dealership. (*Id*. at 72-74). A worker in the dealership's garage answered C.I.'s pounding on the garage bay doors and called the police. (*Id.* at 74). A McPherson police officer arrived and took C.I.'s report. (*Id*. at 75). They went to the hospital where a rape kit was performed. *Id*.

After C.I.'s escape, the McPherson Police Department received a report of two car-jackings near the motel.  Two women were leaving for work when Knighton came up to the car. He hollered for the keys, which the driver relinquished. Knighton started the car before unexpectedly stopping it and running from it to a truck occupied by a husband and wife. (R. IV, 47; R. VII, 36-37, 41). He pounded on the window and opened the door. Knighton tried shoving the wife into the middle, but could not do so because of the center console of the truck.  He then tried to pull her out of the truck, but by this time the husband had left the driver's side of the truck and had come around to Knighton.

(R. VII at 38). Moments later, Knighton ran away while the husband pursued him and the wife police found and arrested at another motel. (R. VII, 41; R. IV, 61).

As noted earlier, Knighton was charged and convicted of kidnapping C.I., two counts of raping C.I., one count of the robbery of C.I., one count of robbery (the first vehicle), and one count of attempted robbery (the second vehicle).

**Conclusions of Law**

Knighton's Petiton is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), and he is entitled to relief only if he can show that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or that his conviction was an "unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). The court presumes that the state court's factual findings are correct in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). *See Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003).

A state court decision is contrary to clearly established precedent if the state court either applies a rule contradicting that set forth in decisions of the United States Supreme Court, or reaches a different result when faced with facts that are materially identical to those in Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision unreasonably applies clearly established precedent only when it correctly identifies a governing legal rule but applies that rule unreasonably to the facts a case. *Id.* at 407-08. A court presented with a Petition

under the AEDPA, therefore, must determine whether the state court's application of clearly-established federal law was objectively unreasonable. *Id.* at 409.

Applying these standards, the court upholds the Kansas courts' determination that sufficient evidence supports Knighton's convictions was not objectively unreasonable. A reasonable fact finder could have found the essential elements of the crimes beyond a reasonable doubt. *See Brown v. Sirmons,* 515 F.3d 1072, 1088-89 (10th Cir. 2008) (*quoting Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

The Kansas Court of Appeals considered this claim in Knighton's direct appeal, and – applying the same standard this court uses under *Brown* – held that a rational fact finder could have convicted Knighton on each of the charged counts. *Knighton*, 2006 WL 2864743 at *1. Specifically, the court found that the kidnapping count was supported by evidence that Knighton had forced C.I. to drive from Junction City to Salina and McPherson by threats of physical violence, including statements that he had a gun, and that he confined her against her will in the motel room in McPherson. (R. VI. at 45-46). C.I.'s testimony as to the events in the McPherson motel room, that she was forced to comply with Knighton's demands, and his threats to her life amply support the rape convictions. (*Id.* at 65, 69). The robbery convictions were based on evidence that Knighton had by threat or by force taken money from C.I. and an automobile from its driver; the attempted robbery conviction was supported by the evidence showing Knighton's attempt to forcibly enter and commandeer the second vehicle.

There is absolutely no basis for concluding that the previous state court decisions unreasonably applied clearly-established federal law. Knighton's convictions were supported by substantial evidence, and this claim fails.

> Nor were the convictions multiplicious under Kansas law.
>
> Multiplicity exists when the State uses a single wrongful act as the basis for multiple charges. Charges are not multiplicious when the offenses occur at different times and in different places. A test for determining whether a continuous transaction results in the commission of but a single offense is whether separate and distinct prohibited acts, made punishable by law, have been committed.

*State v. Long*, 26 Kan. App.2d 644, 645, 993 P.2d 1237 (Kan. App.1999), *rev. denied*, 268 Kan. 892 (Feb. 11, 2000). In *Long*, the court upheld as non-multiplicitous a defendant's conviction of five counts of rape, where the rape involved a single victim held prisoner in an apartment for one to two hours. The court held that the sexual assaults were "sufficiently separated by time, location, and circumstance to constitute separate offenses rather than one continuous incident." *Id.* at 650. This court rejected *Long*'s subsequent habeas challenge to his rape convictions, holding that the Kansas Court of Appeals' definition of multiplicity "is consistent with federal case law." *Long v. Roberts*, No. 07-3009-MLB, 2007 WL 2857111, *8 (D. Kan. Oct. 3, 2007). *See also State v. Richmond*, 250 Kan. 375, 379, 827 P.2d 743 (1992).

Responding to Knighton's multiplicity argument in his direct appeal, the Court of Appeals followed *Richmond* and concluded:

> In the present case, C.I. testified Knighton had sexual intercourse with her in the motel room and then demanded she call her boss. Both Knighton and C.I. talked with C.I.'s boss. Approximately a half hour to an hour after the first act of intercourse, Knighton again had intercourse with C.I. without her consent.
> The two acts of sexual intercourse were separated by time and by the act of telephoning C.I.'s boss. These facts constituted two separate units of prosecution.

2006 WL 2864743 at *4. This conclusion is consistent with Kansas law and with federal law, which permits conviction on separate counts where there is evidence showing that separate offenses occurred. *See Long v. Roberts*, 2007 WL 2875111 at *8. This claim is without merit.

Knighton next argues that the state courts erred in refusing to suppress his extrajudicial statements. Knighton was interviewed by McPherson Police Detective Chad Curl on the morning of his arrest.  He contends that he was not properly advised of his rights under *Miranda*. As the Kansas Court of Appeals noted, the trial court conducted a separate evidentiary hearing on the issue. *Knighton*, 2006 WL 2864743 at *2.

At the hearing, Curl testified that he first asked Knighton if he (Curl) could ask Knighton some questions and Knighton refused.  However, after Curl turned to leave, Knighton said he wanted to talk about the vehicles. Curl then read Knighton his *Miranda* rights, including a statement that he need "not answer any questions or make any statements." (R. V, 9). Knighton said he understood his rights and did not ask for an attorney until later in the morning. (R. V, 13, 16).

In the next of his meetings with Knighton, Curl obtained a written waiver of Knighton's *Miranda* rights. Curl has stopped the first interview after Knighton began acting bizarre. (*Id*. at 12). Knighton terminated the second meeting by asking for a lawyer. (*Id*. at 20). A final meeting occurred on the way back from Knighton's hospital visit, when Knighton announced, "[L]et's cut through the bullshit," and said he wanted to talk without any attorneys. (*Id*.) Detective Curl again issued a *Miranda* warning, and Knighton indicated he understood but wanted to talk. (*Id*. at 20-21).

On direct appeal, the Kansas Court of Appeals acknowledged that there was conflicting testimony on the suppression issue given Knighton's assertions that he never waived his *Miranda* rights to talk to Curl. However, the court also noted that the trial court has specifically found that "Detective Curl's testiomony [was] more credible and believable." *Knighton*, 2006 WL 2864743 *2.

9

When presented with a claim that an extrajudicial statement is not voluntarily, a reviewing court must make an independent review of the record to resolve the ultimate issue of voluntariness. *United States v. Glover*, 104 F3.d 1570, 1579-80 (10th Cir. 1997). However, a trial court's resolution of "subsidiary factual questions" such as the credibility of witnesses, should be rejected only when they are clearly erroneous. *Id.* (quoting *United States v. Chalan*, 812 F.2d 1302, 1307-08 (10th Cir. 1987). Here, the Kansas Court of Appeals specifically found after reviewing the record that Knighton had reinitiated the interview with Detective Curl and gave his statement after being again told of his *Miranda* rights.

Finally, Knighton argues that the trial court should have given instructions on the lesser included offenses of attempted theft or attempted robbery. In the direct appeal, the Court of Appeals noted that Knighton had not requested such instructions at trial, and refused to find that it was clear error for the trial court to refuse to given the requested instructions. *Knighton*, 2006 WL 2864743 *2. The putative error in refusing to give such limiting instructions will not serve as a basis for federal habeas relief, since there is no recognized "federal constitutional right to a lesser included offense instruction in non-capital cases." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir., 2004) (stating that Tenth Circuit "precedents establish a rule of 'automatic non-reviewability' for claims based on a state court's failure, in a non-capital case, to give a lesser included offense instruction"); *Torres v. Roberts*. 253 Fed. Appx. 783, 2007 WL 3302437, *3 (10th Cir., 2007).

In addition to his petition for habeas relief, Knighton has also moved for appointment of counsel, and for a second extension of time to file a traverse. (Dkt. No. 13, 14). These motions are denied. Knighton has already received one extension of time, (Dkt. No. 12), and his current motion offers no rationale for delay other than his request for appointment of counsel. And his request for

10

appointment of counsel has been previously explicitly denied, the court holding that "Petitioner has no right to counsel at this point in this federal habeas corpus action. His main task is to present the facts upon which his claims are based, and he appears capable of doing so." (Dkt. No. 7). Nothing has changed in the matter which would support appointment of counsel.  Petitioner Knighton has ably set forth the facts of the case and presented his arguments, allowing the court to determine the merits of his claims without further evidentiary hearing.

IT IS ACCORDINGLY ORDERED this 13th day of February, 2009, that the Petition for Writ (Dkt. No. 1) is hereby denied.

>                               s/ J. Thomas Marten
>                               J. THOMAS MARTEN, JUDGE